STOVER v WHITING

Docket No. 85397. Submitted May 6, 1986, at Lansing. Decided February 2, 1987.

Plaintiff, Chris L. Stover, brought an action in the 56th District Court against defendants, Kendall C. Whiting and Jani M. Whiting, when the defendants refused to enter into a land contract for the purchase of 1⅓ acres of land and the house thereon. The parties had agreed to enter into the land contract, however, after it was determined that the plaintiff could not obtain conditional releases from lienholders on the land prior to the execution of the land contract, the defendants refused to complete the agreement. The district court found that plaintiff did not have a marketable title nor was he in a position to perfect the title within a reasonable time. The district court entered a judgment for the defendants. Plaintiff appealed and the Eaton Circuit Court, Richard M. Shuster, J., affirmed the district court decision. Plaintiff appeals from the order affirming the district court's decision.

The Court of Appeals *held:*

The district court correctly ruled that the defendants justifiably refused to execute a land contract pursuant to the buy-sell agreement because the plaintiff could not obtain releases from the lienholders.

Affirmed.

1. Vendor and Purchaser — Land Contracts — Encumbrances.

Purchasers may withdraw from an agreement to enter into a land contract where the seller is not able to obtain conditional releases from lienholders on the land prior to the execution of the land contract.

2. Vendor and Purchaser — Marketable Title.

The vendor is generally under an obligation to convey a mer-

References

Am Jur 2d, Vendor and Purchaser §§ 131 *et seq.;* 190 *et seq.*

Validity, construction, and effect of land sale contract providing that title must be satisfactory to purchaser. 47 ALR2d 455.

chantable or marketable title; marketable title is one of such character which should assure the vendee the quiet and peaceful enjoyment of the property, which must be free from encumbrance; a title may be regarded as unmarketable where a reasonably prudent man, familiar with the facts, would refuse to accept title in the ordinary course of business, and it is not necessary that the title actually be bad in order to render it unmarketable.

*Charles E. Oesterle,* for plaintiff.

*Bean & Bean, P.C.* (by *Wiley E. Bean*), for defendants.

Before: CYNAR, P.J., and R. B. BURNS and F. X. O'BRIEN,* JJ.

CYNAR, P.J. Following a district court bench trial, judgment was entered in favor of the defendants (purchasers) on their counterclaim. Plaintiff (seller) appealed and the circuit court affirmed. This appeal is by leave granted.

The sole issue presented in this appeal is whether the purchasers may withdraw from an agreement to enter into a land contract to purchase 1⅓ acres of land because the seller is not able to obtain conditional releases from lienholders on the 1⅓ acres of land prior to the execution of the land contract.

On August 17, 1982, the parties entered into a sales-purchase agreement whereby the defendants agreed to purchase 1⅓ acres of land on which a house was located, from the plaintiff, for $49,900 on a land contract. The defendants paid the plaintiff a $500 deposit, took possession of the house at

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the end of August, and made improvements on the house and land.[1]

After the sales-purchase agreement was entered into, plaintiff secured a title insurance policy commitment dated August 24, 1982, and delivered it to the defendants. The title policy indicated certain mortgages encumbered the property, requiring their discharge or same to be shown on the final policy. Another requirement for issuance of the policy was a properly executed deed from Gilbert E. Drewyor and his wife to Chris L. Stover and his wife. Also required was a properly executed deed from Chris L. Stover and his wife to Kendall C. Whiting and Jani M. Whiting, husband and wife.

The 1⅓-acre parcel of land was part of an

---

[1] Defendants' Exhibit No. 1 is as follows:

This is a sales-purchase agreement between Chris L. Stover (Seller) of Potterville, Mich. and Kendall C. Whiting (Buyer) of Eaton Rapids, Mich.

The seller agrees to sell and the buyer agrees to purchase the three bedroom house located at 5670 Billwood Hwy. Potterville, Mich. The house shall be sold with approximately 1⅓ acres with the width of the lot to be approx. 210 ft., the depth of the lot to be from the center of Billwood Hwy to approx. the foundation on the front side of the old barn behind the house.

The sale price for above mentioned property shall be $49,900. Five hundred dollars shall be paid by buyer to seller upon signing of this agreement as a deposit. Four thousand five hundred dollars shall be paid to seller by buyer upon the closing of this sale, making the total down payment $5,000 dollars. The interest rate on the land contract shall be 11%. Payments shall be in the neighborhood of $400.00 per month.

Other items to be agreed upon are preparing the lawn for seeding and putting storm windows on the windows.

This sale is subject to credit approval and agreement of all the above mentioned items.

1982 taxes shall be prorated. Taxes starting with 1983 shall be paid by buyer.

Aug 17, 1982 /s/ Chris L. Stover
              /s/ Kathy Stover

Plaintiff's Exhibit No. 1 is identical to defendants' Exhibit No. 1. It is dated August 17, 1982, and signed by Chris L. Stover, Kathy Stover and Jani M. Whiting.

eighty-acre tract which plaintiff was purchasing on a land contract from Gilbert and Grace Drewyor. The eighty-acre parcel was subject to a mortgage from the Drewyors to the Federal Land Bank. Also, the eighty-acre parcel, along with another 320 acres, personal property, and farm crops, secured a loan from Production Credit Association to the Agrivale Farms, a family business in which plaintiff was a minor stockholder.

Plaintiff's attorney's letter dated October 11, 1982, to defendants' attorney indicated that neither the proposed land contract nor the mortgages provided for a partial release. Further, the balance on the land contract was about $68,000, the balance on the Federal Land Bank mortgage was about $34,500, and the balance on the Production Credit Association mortgage was about $714,000. None of the secured parties were prepared at that time to make any specific agreements regarding any partial release.

There was an indication during the trial that the Federal Land Bank was willing to give a partial release upon payment of $20,000 on the debt to it. However, Stover could not get a firm commitment from the Drewyors to give a conditional release.

In a letter dated November 1, 1982, defendants were advised by their attorney against going through with the agreement since clear title might not be obtained although full payment was made. The letter pointed out that the property being purchased was a small part of a larger parcel of land which was mortgaged and the secured parties would not at that time enter into any specific agreement to a partial release.

Defendants, who took possession the last part of August and had made some $1,300 in improvements, had no intention to withdraw from the deal

prior to October. However, based on their attorney's title opinion, they decided not to proceed with the closing. They remained on the property. Plaintiff commenced suit.

By stipulation, defendants vacated the property on December 31, 1982. Eventually, the plaintiff obtained releases from the Drewyors and mortgage holders and sold the property on December 15, 1983, for $44,000.

The trial court found that plaintiff did not have a marketable title nor was he in a position to perfect the title within a reasonable time. The plaintiff was not able to obtain a release of the 1⅓-acre parcel from the Drewyors nor from the mortgage lienholders whose interests exceeded the value of the said 1⅓-acre parcel many times. The trial judge ruled that defendants justifiably refused to complete the transaction because of the plaintiff's inability to tender marketable title within a reasonable time. The trial court awarded damages to the defendants in the amount of $760.

A distinction is made in land contract cases where the vendor has no title and cannot deliver title in accordance with the terms of the contract at the time agreed upon, and where the vendor has only an interest in the title at the time of execution, but can deliver and convey title at the time agreed upon.

In *Silfver v Daenzer,* 167 Mich 362; 133 NW 16 (1911), the parties executed a contract whereby the vendor agreed to sell two hundred acres of land for a consideration of $1,500. The main question was, "Can the vendee in an executory contract for the purchase of lands rescind the contract and recover the portion of the purchase price paid because of defective title to a portion thereof in advance of the time when, by the terms of the contract, the vendor is bound to convey?" 167 Mich 369. The

Supreme Court observed that this was not a case
where the vendor had no title at all, or was not in
a position to acquire title since it was undisputed
that title would be perfected. It was sufficient that,
at the time the contract was made, the vendor had
acted in good faith and had such an interest that
good title could be conveyed at the proper time.
See also *Rogers v Eaton,* 181 Mich 620; 148 NW
348 (1914).

In *Adadow v Perry,* 225 Mich 286; 196 NW 190
(1923), the vendees sued to rescind a land contract
on the ground of fraud, claiming the vendors
orally represented to be the owners of the land
when in fact they were purchasing on a land
contract. The Supreme Court indicated that there
were no liens or encumbrances on the property.
While the vendors did not have a perfect title,
they were in a position to, and did, perfect title
within a reasonable time after the contract was
made. The vendors, immediately after the execu-
tion of the land contract, paid off the balance
owing and received a deed. The description of the
property in the deed was incorrect but was cor-
rected before the hearing of the suit was com-
menced. In dismissing the vendees' action, the
Supreme Court ruled that there was no doubt
about the vendors' good faith and their ability to
complete their title.

The Supreme Court in *Detroit Fidelity & Surety
Co v Bushman,* 260 Mich 115; 244 NW 251 (1932),
noted the language in *Silfver v Daenzer, supra,*
and concluded that it is sufficient that the land
contract is made by the vendor in good faith and
that he has such an interest in the property or is
so situated that he can convey good title at the
proper time. Further, the Court observed that
knowledge by the vendee of a defect in the ven-
dor's title at the time of purchase waives objection

to the title. In *Walcrath Realty Co v Van Dyke,* 263 Mich 316; 248 NW 634 (1933), the Supreme Court, relying on *Silfver* and *Detroit Fidelity & Surety Co,* observed that ordinarily a vendee is not entitled to rescind for failure of the title before the vendor is bound to convey. The testimony was undisputed that the vendor was always able to furnish title and a warranty deed. Following a trial in justice court, the vendor obtained a deed and produced it at trial in the circuit court. The Supreme Court ruled that where no injury resulted to the vendee, the vendor having entered into the contract in good faith, and being able to furnish title on demand, there was no fraud justifying recission.

In the matter before us, the facts are substantially different from the cases cited herein. We do not have an executed land contract, but an agreement to enter into a land contract to purchase a 1⅓-acre parcel of land for a consideration of $49,900. At best, the agreement can be described as a "made so" agreement which failed to include provisions which might have been helpful in avoiding this litigation.

Generally speaking, the vendor is under an obligation to convey a merchantable or marketable title. *Fix v Amiot,* 251 Mich 124; 231 NW 114 (1930). Marketable title is one of such character which should assure the vendee the quiet and peaceful enjoyment of the property, which must be free from encumbrance. A title may be regarded as "unmarketable" where a reasonably prudent man, familiar with the facts, would refuse to accept title in the ordinary course of business, and it is not necessary that the title actually be bad in order to render it unmarketable. *Madhavan v Sucher,* 105 Mich App 284; 306 NW2d 481 (1981).

While the August 17, 1982, purchase agreement has no language concerning furnishing a title policy to support marketable title, furnishing the same by the vendor to the vendee must have been contemplated since the title policy is dated August 24, 1982. The letter of October 11, 1982, indicates efforts were made prior thereto by the vendor Stover for a partial release of the 1⅓-acre parcel of land from the existing encumbrances, presumably upon receiving payment of the purchase price from the Whitings. None of the secured parties would agree to any partial release. At this point in time, at least as far as the matter stood with the Drewyors, if the Whitings had entered into the land contract and paid in full, there was no assurance of receiving marketable title.

The district court correctly ruled that the defendants justifiably refused to execute a land contract pursuant to the buy-sell agreement because the plaintiff could not obtain releases from the lienholders. The circuit court's decision affirming the district court's judgment in favor of the defendants is affirmed.