DARR v FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF
DETROIT

Docket No. 77616. Argued June 4, 1986 (Calendar No. 15). Decided
September 16, 1986.

Richard E. Darr and Nancy Jo Darr and J. Lawrence Moisan and
Kathleen A. Moisan brought an action in the Wayne Circuit
Court against First Federal Savings & Loan Association of
Detroit, the Darrs' mortgagee, seeking a declaration that the
sale of the Darrs' mortgaged realty to the Moisans on a land
contract created a lien or encumbrance subordinate to the
mortgage, constituting a permissible exception to a due-on-sale
clause contained in the mortgage instrument, and to enjoin
foreclosure by First Federal. The court, James E. Mies, Jr.,
entered judgment for the plaintiffs, finding that a land contract
is a lien or encumbrance which is subordinate to the mortgage
and was excluded from the acceleration provisions of the due-
on-sale clause. The Court of Appeals, R. M. MAHER, P.J., and
D. E. HOLBROOK, JR., and LATREILLE, JJ., affirmed in an opinion
per curiam (Docket No. 71078). The defendant appeals.

In a unanimous opinion by Justice ARCHER, the Supreme
Court *held:*

The provision in the due-on-sale clause of the mortgage
instrument that liens or encumbrances subordinate to the
mortgage would not amount to a sale or transfer of the security
property, and thus not trigger acceleration provisions of the
clause, was not intended to apply to liens created only as a
result of the execution by the mortgagor of a land contract
which had as its primary purpose the transfer or sale of the
property.

1. A land contract vendor's interest in a land contract is
personalty, and, upon the vendor's death, passes to the adminis-
trator of his estate and does not descend to his heirs as real
property. By contrast, a vendee's interest is real property which

REFERENCES

Am Jur 2d, Mortgage § 1 *et seq.*
Am Jur 2d, Vendor and Purchaser, § 197 *et seq.*
See the annotations in the ALR3d/4th Quick Index under Mort-
gage; Vendor and Purchaser.

does descend upon the vendee's death to his heirs. The vendee of a land contract is vested with equitable title in the land, while legal title remains in the vendor as security for payment of the purchase price. The vendor retains an equitable lien upon the land for any unpaid purchase money, and the vendee, to the extent money is paid on the contract, acquires a lien as against subsequent encumbrances and purchases. The liens are not property rights in or to the land, but, rather, constitute a charge against or securities in the land. Thus, the primary purpose of a land contract is the sale and purchase of land.

2. In this case, the primary purpose of the land contract was the sale and purchase of the Darrs' land. The due-on-sale clause in the Darrs' mortgage provided that if the security property were sold or transferred by the Darrs' without prior written consent of the lender, the lender could accelerate the mortgage balance. The Darrs' and the Moisans' liens as vendors and vendees under the land contract were not liens or encumbrances subordinate to the mortgage, and thus were not excepted from the provisions of the due-on-sale clause.

Reversed.

146 Mich App 568; 381 NW2d 769 (1985) reversed.

1. MORTGAGES — LAND CONTRACTS — DUE-ON-SALE CLAUSES.

A provision in a due-on-sale clause of a mortgage instrument that liens or encumbrances subordinate to the mortgage would not amount to a sale or transfer of the security property, and thus not trigger acceleration provisions of the clause, was not intended to apply to liens created only as a result of the execution by the mortgagor of a land contract which had as its primary purpose the transfer or sale of the property.

2. PROPERTY — REALTY — LAND CONTRACTS.

The primary purpose of a land contract is the sale and purchase of land.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Harry G. Iwasko, Jr.,* and *Philip J. Smith,* Assistant Attorneys General, for the intervening plaintiff State of Michigan.

*Clark, Klein & Beaumont* (by *Patrick J. Keating, David M. Hayes,* and *Thomas S. Nowinski*) for the defendant.

Amici Curiae:

*William K. Black* and *Paul W. Grace* (*Harry W. Quillian* and *Ralph W. Christy,* of counsel) for Federal Home Loan Bank Board.

*Garrett C. Burke* and *Allan G. Ratner* for Federal Home Loan Mortgage Corporation.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Gregory L. McClelland* and *Jeffery V. Stuckey*) for Michigan Association of Realtors.

*Warner, Norcross & Judd* (by *Jeffrey O. Birkhold* and *James H. Breay*) for Michigan Bankers Association.

*Mason, Steinhardt & Jacobs, P.C.* (by *John E. Jacobs* and *Jeannine F. Gleeson-Smith*), for Mortgage Bankers Association of Michigan.

*Stephen A. Bromberg, Alan S. Levine,* and *Robert R. Nix, II,* for the State Bar of Michigan, Real Property Law Section.

ARCHER, J.

### I. FACTS

The facts and procedural history in this case are set forth in detail in *Darr v First Federal Savings & Loan Ass'n of Detroit,* 146 Mich App 568; 381 NW2d 769 (1985). Briefly, in 1977 the Darrs purchased a home located in Redford Township. The home was financed through a mortgage which the Darrs executed with First Federal for $31,000. The mortgage document was a standard form described

as the "FNMA[1]/FHLMC[2] Uniform Mortgage Instrument." The due-on-sale clause contained in paragraph 17 of the mortgage instrument is the focus of this appeal.[3]

Approximately two years after the Darrs executed the mortgage agreement, they sold their home to coplaintiffs Moisan. The Moisans paid cash for the Darrs' equity and signed a land contract. The Darrs failed to obtain consent from First Federal prior to executing the land contract as required by paragraph 17 of the mortgage instrument. The Darrs continued to submit mortgage payments to First Federal, but these payments were rejected. In 1980, First Federal notified the Darrs that the mortgage balance was due

[1] FNMA stands for Federal National Mortgage Association.

[2] FHLMC stands for Federal Home Loan Mortgage Corporation.

[3] Paragraph 17 provides:

17. Transfer of the Property Assumption. *If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage,* (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Mortgage to be immediately due and payable.

\* \* \*

*If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 14 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due.* If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 18 hereof. [Emphasis supplied.]

We note that paragraph 17 of the FNMA/FHLMC has since been revised. Revised paragraph 17 does not contain a lien or encumbrance exception to the due-on-sale clause.

and payable within thirty days pursuant to the terms of the due-on-sale clause contained in paragraph 17 (see n 3). When the Darrs failed to pay the balance due, First Federal instituted foreclosure proceedings.[4]

One day prior to the date scheduled for the sheriff's sale on foreclosure, plaintiffs filed suit in Wayne Circuit Court, seeking declaratory and injunctive relief. Plaintiffs' complaint was based on two theories: (1) enforcement of the due-on-sale clause constituted an unreasonable restraint on alienation of the property, and (2) sale of the mortgaged realty on land contract terms creates "a lien or encumbrance" within the meaning of the lien or encumbrance exception contained in paragraph 17.

Approximately one year after plaintiffs filed their complaint, the United States Supreme Court decided *Fidelity Federal Savings & Loan Ass'n v de la Cuesta,* 458 US 141; 102 S Ct 3014; 73 L Ed 2d 664 (1982). On the basis of the holding in that case, plaintiffs abandoned their restraint on alienation claim.

On October 6, 1982, First Federal filed a motion pursuant to GCR 1963, 117.2(1) for summary judgment on plaintiffs' remaining claim. The circuit court denied First Federal's motion, finding that a land contract is a lien or encumbrance which is subordinate to the mortgage and was excluded from the due-on-sale clause. Pursuant to the terms of paragraph 17, First Federal moved for rehearing of its summary judgment motion, and the circuit court declined to reverse itself.

By agreement of the parties, judgment was entered for plaintiffs on April 12, 1983, pursuant to

---

[4] The foreclosure was commenced under MCL 600.3201 *et seq.;* MSA 27A.3201 *et seq.*

GCR 1963, 117.3.[5] Defendant appealed, and the Court of Appeals affirmed the judgment of the circuit court on the basis that the land contract created a lien which qualified for the "subordinate lien" exception to the due-on-sale clause.

## II

ISSUE—SHOULD A LAND CONTRACT BE INTERPRETED AS A SALE OR TRANSFER OF INTEREST WITHIN THE MEANING OF PARAGRAPH 17 OF THE FNMA/FHLMC UNIFORM MORTGAGE INSTRUMENT AND NOT A "LIEN OR ENCUMBRANCE" WITHIN THE EXCLUSION OF PARAGRAPH 17?

### A. HISTORICAL BACKGROUND

A review of the regulations and legislative history of the due-on-sale clause would be helpful. Briefly, in 1976 the Federal Home Loan Bank Board issued a regulation governing due-on-sale clauses contained in federal savings and loan association loan instruments.[6] Prior to the regulation being issued, there was a degree of controversy concerning a federal savings and loan association's authority to enforce a due-on-sale clause. The board decided to issue a regulation governing such clauses to ensure that a federal savings and loan association's ability to accelerate a loan upon transfer of the security property would not be restricted. The board was concerned that the elimination of the due-on-sale clause would " 'have an adverse [e]ffect on the earning power and financial stability of Federal associations, [would] impair the ability of Federal associations to sell their loans in

---

[5] We note that because there was no real dispute as to the facts in this case, a factual hearing was never held in the trial court.

[6] The due-on-sale regulation was initially promulgated in 12 CFR 545.6-11(f) (1977). The regulation is now set forth in 12 CFR 545.8-3(f) (1983).

the secondary markets, [would] reduce the amount of home-financing funds available to potential home buyers, and generally . . . cause a rise in home loan interest rates.' " *de la Cuesta, supra* at 168.

In *de la Cuesta,* the United States Supreme Court held that the board's due-on-sale regulation preempts conflicting state limitations on the due-on-sale practices of federal associations. *Id.* at 170. Prior to *de la Cuesta,* Michigan, as well as several other states, blocked enforcement of due-on-sale clauses. In Michigan the rule was established by the courts.

This Court was first presented with a mortgage containing a due-on-sale clause in *Campau v Chene,* 1 Mich 400 (1850). The merits of the controversy in *Campau* were not decided due to the thirty-eight year lapse between the alleged breach and the date of the commencement of the suit. The Court stated, however, that if the "covenant against alienation"[7] contained in the mortgage instrument "could be considered a condition, it would be void. For a condition annexed to a conveyance, in fee or devise, that the purchaser or devisee should not alien, is unlawful and void." *Id.* at 414. One hundred and twenty-seven years elapsed before a Michigan appellate court was asked to consider another mortgage instrument containing a due-on-sale clause.[8]

---

[7] The covenant against alienation read as follows:

> And for the security of the payment of the said one thousand pounds, in the manner above mentioned, and for the fulfilling of the clauses and conditions here above expressed, *Chene is prohibited from alienating, exchanging, or selling the farm or personal property without Campau's consent, and the whole is to remain and stand hypothecated till the payment in full of said one thousand pounds.* [Emphasis supplied. *Id.* at 411.]

[8] See *Nichols v Ann Arbor Federal Savings & Loan Ass'n,* 73 Mich App 163; 250 NW2d 804 (1977), lv den 400 Mich 844 (1977).

In *Nichols v Ann Arbor Federal Savings & Loan Ass'n,* 73 Mich App 163; 250 NW2d 804 (1977), lv den 400 Mich 844 (1977), the Michigan Court of Appeals determined that the due-on-sale clause was a direct restraint on alienation because it was so closely akin to a promissory restraint. The *Nichols* Court concluded that absent a showing by the lender attempting to enforce the due-on-sale clause that there was a threat to his legitimate interests in the security property sufficient to justify the restraint on alienation,[9] the due-on-sale clause was an unreasonable restraint and therefore unenforceable.[10]

[9] These legitimate interests included protecting the security property from waste or impairment and also guarding against the risks of having to resort to the security upon default.

[10] We note that the categorization of a due-on-sale clause as a restraint on alienation has been harshly criticized. The Nebraska Supreme Court stated in *Occidental Savings & Loan Ass'n v Venco,* 206 Neb 469, 472-474; 293 NW2d 843 (1980):

> It is true that the possibility of acceleration may impede the ability of an owner to sell his property as he wishes; nonetheless, not every impediment to a sale is a restraint on alienation, let alone contrary to public policy. It is a fact that zoning restrictions, building restrictions, or public improvements may impede the sale and substantially affect the ability of an owner to realize a maximum price. Yet no one suggests that such restrictions or covenants, as a class, are invalid simply because they affect the ease with which one may dispose of one's property. We are somewhat at a loss to understand how or why so many courts have been willing to describe a "due on sale" clause as a restraint on alienation and we are unwilling to do so. Therefore, we begin our analysis by holding that "due on sale" clauses are not direct restraints on alienation within the meaning of the law.
>
> *       *       *
>
> Whatever an indirect restraint on alienation . . . may be, a "due on sale" clause in a mortgage does not fall within the category. . . . [S]ome covenants may impair the marketability of property and yet not be restraints on alienation, direct or indirect, as that concept is known in the law.

Accepting the rationale in *Venco,* we believe that due-on-sale clauses should not be categorized as restraints on alienation.

As stated above, the holding in *Nichols* relative to loans originated by federal associations was negated by the United States Supreme Court decision in *de la Cuesta, supra.* We note that subsequent to the *de la Cuesta* decision federal[11] and state[12] legislation was enacted which provides that due-on-sale clauses contained in real property loan contracts written by federal associations and state lending institutions are enforceable.

### B. ANALYSIS

The present case involves a mortgage instrument which excepts from the due-on-sale clause a "lien or encumbrance subordinate" to the mortgage. We are asked to determine whether a land contract sale of the security property to a third party triggered the due-on-sale clause.

Initially, we note that the fact that the land contract executed between the Darrs as vendor and the Moisans as vendee constituted a sale of the security property is not disputed.

A vendor's interest in the land contract is personal property. *Klever v Klever,* 333 Mich 179, 190; 52 NW2d 653 (1952). Upon the death of the land contract vendor, his interest goes to his administrator as personalty and does not descend to his heirs as real property. In contrast, the vendee's interest in the land contract is real property which descends to his heirs upon his death. *Bowen v Lansing,* 129 Mich 117, 120; 88 NW 384 (1901).

As we stated in *Barker v Klingler,* 302 Mich 282, 288; 4 NW2d 596 (1942):

It is well settled in this State that the vendee in

---

[11] See 12 USC 1701j-3, commonly referred to as the Garn-St. Germain Depository Institutions Act of 1982, PL 97-320.

[12] See MCL 445.1621 *et seq.;* MSA 23.1125(21) *et seq.*

a land contract is vested with the equitable title in the land, and that the legal title remains in the vendor and is held as security for the payment of the purchase price of the land, upon the payment of which the vendee is entitled to a conveyance of legal title.

Thus, a land contract vendee's rights are equitable. A vendee of a nonexecutory land contract is entitled to possession of the land.[13] To the extent that the vendee pays purchase money on the land contract, he retains an equitable lien upon the land as against subsequent encumbrances and purchases.[14] The vendor retains an equitable lien upon the land for any unpaid purchase money as against assignees in bankruptcy or insolvency or a general assignee for the benefit of creditors.[15]

In *Post v Campau,* 42 Mich 90, 94-95; 3 NW 272 (1879), we defined an encumbrance to include anything which

constitutes a burden upon the title; a right of way, . . . a condition which may work a forfeiture of the estate, . . . a right to take off timber, . . . a right of dower, whether assigned or unassigned . . . . In short, "every right to, or interest in the land, to the diminution of the value of the land, *but consistent with the passage of the fee by the conveyance.*" [Emphasis supplied.]

Hence, although an encumbrance is typically adverse to the interest of the landowner, it does not conflict with his conveyance of the land in fee. A lien is one type of encumbrance.

[13] *Bowerman v Newaygo Circuit Judge,* 353 Mich 535, 539; 91 NW2d 879 (1958).

[14] This rule was established in the courts of chancery in England and was first pronounced in Michigan in *Payne v Atterbury,* Harr Ch 414 (Mich, 1842).

[15] *Lyon v Clark,* 132 Mich 521; 94 NW 4 (1903).

The vendor's and the vendee's liens grow out of the transaction of the sale and purchase of land. The liens originate from the same motive, from the desire of equity to compel "righteous" dealing between vendor and vendee. The liens would not come into existence absent the execution of the land contract. A land contract vendee's or vendor's lien is not a property right in or right to the land itself, it constitutes instead, a charge or security in the land.[16]

On the basis of all of the above, we conclude that the primary purpose of a land contract is the sale and purchase of land by vendor and vendee, respectively.

The due-on-sale clause presented in this case provides that if the security property is sold or transferred by the borrower without the lender's prior written consent the lender may accelerate the mortgage balance. Liens or encumbrances subordinate to the mortgage are excepted from the due-on-sale clause. We believe that the lien or encumbrance exception to the due-on-sale provision does not include liens which are created only as a result of the execution of a land contract which has as its primary purpose the transfer or sale of the security property.

## CONCLUSION

The primary purpose of the land contract executed between the Darrs and the Moisans was the sale and purchase of the security property. The vendor's and vendee's liens would not have been created had the land contract not been executed. Because the primary purpose of the land contract was the sale and purchase of the security property,

[16] See *Aetna Casualty & Surety Co v Starkey,* 116 Mich App 640; 323 NW2d 325 (1982).

we hold that the lien or encumbrance exception to the due-on-sale clause is not applicable to the facts of this case.

The decision of the Court of Appeals is reversed.

WILLIAMS, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred with ARCHER, J.