LAFOND v RUMLER

Docket No. 194797. Submitted September 9, 1997, at Grand Rapids. Decided November 18, 1997, at 9:15 A.M.

Lorraine LaFond brought an action in the Jackson Circuit Court against James J. Rumler, seeking the elimination of an addendum to a land contract or the setting aside of the entire land contract by which the defendant had sold realty to the plaintiff. The addendum provided that if the realty was sold by the plaintiff for more than her purchase price within fifteen years of the date of the land contract, the plaintiff and the defendant would divide equally between them the amount exceeding the plaintiff's purchase price. Under the addendum, the defendant reserved the right to approve or reject any sale by the plaintiff, and disagreements between the plaintiff and the defendant over sales price would be decided by an appraiser of the defendant's choice and an appraiser of the plaintiff's choice or by a third, independent appraiser if the first two appraisers could not agree. The court, Chad C. Schmucker, J., invalidated the addendum, finding it to be an unenforceable restraint on alienation, and ordered the defendant to credit the plaintiff for land contract payments made to the defendant's agent after the defendant allegedly had revoked a power of attorney granted to that agent for the conveyance of the property. The defendant appealed.

The Court of Appeals *held*:

1. Restraints on the conveyance or assignment of a land contract purchaser's interest in the property exist for the benefit of the land contract vendor to safeguard against waste or impairment or loss of security and are enforceable if they are reasonable. The land contract addendum in this case is an unreasonable restraint on alienation because it goes beyond protecting the interests of the defendant in terms of safeguarding against waste or impairment or loss of security.

2. A power of attorney to convey land is not revoked unless a written revocation is recorded in the same office in which the instrument granting the power was recorded. In this case, in the absence of evidence of a recorded revocation of the power of attorney granted by the defendant to his agent, the trial court did not

err in ordering the defendant to credit the plaintiff with payments made to the defendant's agent after the agent's power of attorney allegedly had been revoked.

Affirmed.

1. VENDOR AND PURCHASER — LAND CONTRACTS — RESTRAINTS ON ALIENATION.

   Restraints on the conveyance or assignment of a land contract purchaser's interest in the property exist for the benefit of the land contract vendor to safeguard against waste or impairment or loss of security and are enforceable if they are reasonable.

2. VENDOR AND PURCHASER — LAND CONTRACTS — RESTRAINTS ON ALIENATION.

   The remedy for an unreasonable restraint on alienation in a land contract is to declare the restraining provision unenforceable, not to declare the conveyance unenforceable.

3. AGENCY — POWERS OF ATTORNEY — CONVEYANCES OF LAND.

   A power of attorney to convey land is not revoked unless a written revocation is recorded in the same office in which the instrument granting the power was recorded (MCL 565.37; MSA 26.554).

*Jacobs & Engle, P.C.* (by *Jerry M. Engle*), for the plaintiff.

*Richard D. Zaharie,* for the defendant.

Before: GRIFFIN, P.J., and WAHLS and GRIBBS, JJ.

GRIFFIN, P.J. Defendant appeals as of right the trial court's order declaring that an addendum to a land contract was void because it constituted an unenforceable restraint on the right of alienation. We affirm.

I

Defendant agreed to sell to plaintiff, by means of a land contract, a parcel of property for $60,000. During negotiations over the terms of the contract, a third party offered to purchase the property for $80,000. However, defendant had an immediate need for the $20,000 down payment offered by plaintiff. Consequently, defendant and plaintiff agreed that plaintiff

would purchase the property for $60,000, offering a $20,000 down payment and monthly installments of $400 on the $40,000 balance. Plaintiff agreed that she would then immediately resell the property to the third party for $80,000 and share the profit with defendant. This arrangement was set forth in a land contract and attached addendum, the latter being the subject of this appeal. The addendum, signed by both plaintiff and defendant, provides as follows:

> In the event that this property is sold, bartered, transferred or otherwise disposed of, by the vendee within 15 years from the date of this land contract, it is agreed by the parties hereto that any sale over the amount of $60,000.00 plus taxes that are due on 1 December 1993, shall be divided equally between the vendor and vendee of this land contract.
>
> Sale price will not be arbitrary. Purchaser [sic] must get written permission from sellers or their agent before accepting any offer. Sellers [sic] reserves the right to reject any offer in its entirety, subsequent dispute(s) will be settled by, (1) each party hires a licensed appraiser, costs are to be paid by respective parties; (2) each party submits an appraisal to the other party; (3) if an agreement cannot be reached, the appraisers select a third independent appraiser, costs are to be split equally between sellers and purchasers for the costs of the third independent appraiser; (4) the third appraiser shall settle all disputed issues; (5) all decisions of disputed issues shall be binding on all parties; (6) both parties realize that time is of essence, therefore, each party shall hire an appraiser within five (5) working days and each party shall instruct their individual appraisee [sic] to expedite its appraisal submittal; (7) each appraiser shall submit their appraisal simultaneously to sellers and purchaser.
>
> As an example, if the property should be sold for $100K, the vendor and vendee would equally divide $30,000 or the excess of the $60K plus taxes stated above. This amend-

ment shall be binding on any assignees or beneficiaries of the vendee.

After the land contract and addendum between plaintiff and defendant was signed, plaintiff attempted to sell the property to the third party. The third party indicated that it would purchase the property for $80,000 by means of a land contract. This mode of purchase was unacceptable to defendant because he wanted full payment in cash for the property. As a result, the subsequent resale never transpired.

Plaintiff filed a complaint seeking to eliminate the addendum to the land contract or, in the alternative, set aside the entire land contract. Plaintiff contended that the addendum constituted an unreasonable interference with plaintiff's right to use and enjoy the property. After a hearing on the matter, the trial court held that the addendum was part of the contract and that plaintiff knowingly entered into the agreement. However, although the addendum did not restrict plaintiff's right to sell the property, the court found that it unduly restricted her right to sell the property at her chosen price and therefore was an unreasonable restraint on alienation.

When reviewing equitable actions, this Court employs review de novo of the decision and review for clear error of the findings of fact in support of the equitable decision rendered. *Webb v Smith (After Remand)*, 204 Mich App 564; 516 NW2d 124 (1994). A trial court's findings are considered clearly erroneous where this Court is left with a definite and firm conviction that a mistake has been made. *Id.*

II

Michigan follows the common-law rule against unreasonable restraints on alienation of property. *Braun v Klug*, 335 Mich 691, 695; 57 NW2d 299 (1953); *Moffit v Sederlund*, 145 Mich App 1, 12-13; 378 NW2d 491 (1985). A restraint on alienation of property is defined as an attempt by an otherwise effective conveyance or contract to cause a later conveyance (1) to be void (disabling restraint), (2) to impose a contractual liability upon the conveyance for conveying in breach of the agreement not to convey (promissory restraint), or (3) to terminate all or part of a conveyed property interest (forfeiture restraint). *Stenke v Masland Development Co, Inc*, 152 Mich App 562, 567; 394 NW2d 418 (1986); *Nichols v Ann Arbor Federal Savings & Loan Ass'n*, 73 Mich App 163,165; 250 NW2d 804 (1977).

An important distinction exists between restraints imposed on the transfer of property held in fee simple and restraints on the conveyance or assignment of an interest in a land contract. In *Sloman v Cutler*, 258 Mich 372, 374-376; 242 NW 735 (1932), the Court considered whether a land contract provision against assignment by the purchaser without the written consent of the vendor was void as a restraint on alienation. The Court explained:

> If one's interest in property is absolute, as a fee simple, restriction on his right of alienation is void as repugnant to the grant. This is because violation of the restriction affects no interest but his own. . . . Where the grantor retains an interest in the property granted, such as a reversionary interest to him as lessor, the interest generally will support the imposing of a restriction on alienation.

The interest remaining in a vendor in a land contract is not a reversion, but it is an important interest, commonly the greater interest and near the value of the property, and his imposing such restriction is sustainable as within his right to preserve his security under the contract. . . .

\*          \*          \*

While the contract remains executory and the vendor has interest in preserving his security, the validity of the restriction as against the vendor is sustained by the great weight of authority, and in justice it ought to be sustained. [*Id.* (citations omitted).]

Cf. *Jankowski v Jankowski*, 311 Mich 340; 18 NW2d 848 (1945).

The Restatement, Property, § 416, p 2448 (1944), likewise provides that

[a] promissory restraint or forfeiture restraint on alienation imposed by a vendor on the interest of a vendee under a contract for the sale of an interest in land is valid until the vendee shall have become entitled to receive a deed, unless the restraint violates the rule against perpetuities.[1]

---

[1] The rationale for this rule is set forth in comment a of § 416, p 2449:

The rule stated in this Section represents a choice between conflicting interests. Normally, where a restraint on the alienation of the vendee's equitable interest under a land contract is imposed, the initial payment is but a small part of the agreed purchase price and payment of the balance is deferred to a substantially later date, or split into periodic small installments. In such case, it is important to the vendor that the particular individual be kept in contact with the land as an inducement to performance of his obligations. The reasonableness of this form of protection of the vendor is sufficient to overcome the considerations otherwise favoring unrestricted freedom of alienation. From the viewpoint of the vendee, the harshness of the terms of the restraint is often substantially alleviated in several particulars. The vendee usually has the privilege of making full payment prior to the ultimate date set in the contract, thereby regaining unrestricted freedom of disposition. Even in the absence of such full payment, permission to assign to

After *Sloman, supra,* the few cases dealing with the issue of restraints on alienation in land contract provisions have taken a more measured approach and have focused on the reasonableness of the restriction at issue.[2] In *Pellerito v Weber,* 22 Mich App 242; 177 NW2d 236 (1970), the Court considered the viability of a clause in a land contract that provided for forfeiture in the event of conveyance by the vendee without the written consent of the vendor. Questioning the broadness of the rule set forth in *Sloman, supra,*[3] the Court stated:

> Restraints on alienation of property are strongly disfavored in Michigan. . . . Where they are permitted, they are strictly construed to prevent a forfeiture. . . . Here plaintiffs [vendors] have not made any allegations of waste or impairment or loss of security. They continue to enjoy the benefit of their 1953 contract. See *Jankowski v Jankowski* [311 Mich 340; 18 NW2d 848 (1945)]. Under the facts of this case we will not require a forfeiture; to do so would be to impose an unreasonable restraint on the alienation of an equitable interest in real property. [*Pellerito, supra* at 245 (citations omitted).]

---

an equally responsible person is normally obtainable from the vendor since the restraint is imposed primarily for reasons of security.

[2] The Restatement, Property, § 406, p 2406 (1944), specifies that a restraint is permissible if it is reasonable under the circumstances:

> *i. Reasonableness.* Even though a restraint on alienation is a forfeiture or promissory restraint and is qualified so as to permit alienation to some though not all possible alienees, the restraint must still be found to be reasonable under the circumstances.

[3] The *Pellerito* Court opined, "Perhaps a reevaluation of the dicta in cases such as *Sloman v Cutler* [258 Mich 372; 242 NW2d 735 (1932)] and *Jankowski v Jankowski,* [311 Mich 340; 18 NW2d 848 (1945)], is in order by the Supreme Court. This course has been suggested by various authors as a measure necessary to protect the lives and life savings of people of modest (and less than modest) means." *Pellerito, supra* at 244, n 2.

A similar forfeiture clause was considered in *Lemon v Nicolai,* 33 Mich App 646, 648-649; 190 NW2d 549 (1971). The Court, following the lead of *Pellerito, supra,* held:

> Defendants claim that the provision prohibiting the assignment of the land contract without plaintiffs' consent, coupled with plaintiffs' refusal to consider whether any change in their risk under the contract has occurred, operates in this instance as an unreasonable restraint on the alienation of property. . . . Defendants further ask that the plaintiffs be held, at a minimum, to the reasonable duty of considering whether or not the assignment has had any adverse effect on their rights under the contract.
>
> *          *          *
>
> In the instant action, as in *Pellerito, supra,* plaintiffs make no allegations as to the possibilities of waste or impairment of [sic] loss of security. Assignees have indicated that they are in a position to continue to provide the benefit under the 1967 contract which plaintiffs bargained for, i.e., $80 or more per month.
>
> Accordingly, we reverse the decision of the lower court and remand for a determination as to whether or not the contested assignment has resulted in "waste or impairment or loss of security" to plaintiffs, as required in *Pellerito, supra.* [*Lemon, supra* at 648-649.]

Cf. *Moffit v Sederlund, supra* at 12-13.[4]

---

[4] Paragraph 8 of the land contract signed by the parties incorporates this line of thought:

Purchaser may assign and convey his interest in this contract or any part thereof PROVIDED, however, that such assignment or conveyance shall not result in the probability of waste or other impairment of Seller's security in the subject premises or the probability of default on behalf of Purchaser as a result of any such assignment or conveyance. Any violation by the Purchaser of this condition shall be considered a default of one of the conditions of this contract. Under no circumstances shall any assignment or convey-

The cases cited recognize the basic premise of the Restatement, § 416, that nonassignability provisions in land contracts exist for the benefit of the vendor to safeguard performance. Under reasonable circumstances, these restrictions will be enforced solely for that purpose. *Pellerito*, supra; *Lemon*, supra.

The addendum in the instant case is unusual in several respects. Although it requires the consent of the vendor before a conveyance by the vendee, as in *Pellerito* and *Lemon, supra*, it does not contain a forfeiture provision. Instead, it imposes converse requirements on the future transfer of the property. The addendum calls for the parties to split the profits from any sale and provides for the resolution of disputes through the use of appraisers, giving ultimate and binding authority to settle any disputes regarding the transfer to an independent appraiser. These restraints exist for a fixed period, fifteen years.

The addendum, although bargained for by the parties, goes unreasonably beyond protecting the defendant's interest in ensuring payment under the original land contract. Unfortunately, the addendum was drafted with one particular transaction in mind and without anticipation of other contingencies. Now that the transaction has failed, through no fault of the plaintiff, and the contract is still at an executory stage, the ramifications of the provisions remain and unduly impair the ability of the plaintiff to convey her interest in the property in the future. As the trial

---

ance release Purchaser from his obligation under the provisions of this contract unless Seller so releases him in writing. No such Assignment, however, shall be valid until written notice thereof has been given to Seller.

court noted, the addendum drafted by defendant does not restrict plaintiff's right to sell the property, but it does restrict her right to sell the property at the price she chooses. If the plaintiff at her own expense undertakes improvements on the property, upon resale she would not fully reap the monetary benefits of those improvements because of the requirement that a percentage of the resale profit be given to defendant.[5] If the defendant refuses permission to sell at a given price, third parties (the appraisers) intercede and the whole transaction potentially falls under the control of a person, the independent appraiser, who is wholly unconnected with either the property or the original vendor and vendee. The appraiser may decide that the property is worth more than a new purchaser is willing to pay, hence disrupting a prospective sale and in effect creating an unreasonable restraint on alienation. Although "[s]ome covenants may impair the marketability of property and yet not be restraints on alienation," *Darr v First Federal Savings & Loan Ass'n of Detroit* , 426 Mich 11, 18, n 10; 393 NW2d 152 (1986), quoting from *Occidental Savings & Loan Ass'n v Venco*, 206 Neb 469, 472-474; 293 NW2d 843 (1980),[6] the addendum in this case exceeds

---

[5] Keeping in mind the distinction drawn in *Sloman, supra*, it is nonetheless relevant to note that, almost without exception, conveyances in fee simple requiring the transferee to pay the transferor a percentage of the price obtained from any subsequent sale have been held invalid. See, e.g., *White v White*, 105 NJ Super 184, 192; 251 A2d 470 (1969) ("[H]ere the owner has put substantial funds of his own into the property. Certainly it would not be equitable to have two-thirds of those sums go to others upon a sale within fifteen years."); *Dunlop v Dunlop's Executors*, 144 Va 297; 132 SE 351 (1926); *Wiesanthal v Young*, 280 AD 590; 116 NYS2d 449 (1952). But see *Kerley v Nu-West, Inc*, 158 Ariz 344; 762 P2d 631 (1988).

[6] The *Darr* Court opined that due-on-sale clauses should not be categorized as restraints on alienation.

the appropriate considerations of "waste or impairment or loss of security" of the vendor's interest and the stability of real estate titles and interjects profit as a factor in the alienation of the property.

We hold that the addendum constitutes an unreasonable restraint on alienation and thereby affirm the decision of the trial court. We find no clear error in the findings of fact rendered by the trial court in support of its equitable decision. When an unreasonable restraint on alienation is found, the remedy is to declare the restraining provision unenforceable, not to declare the conveyance unenforceable. *Moffit, supra* at 13-14. In the event that the property is conveyed in the future, defendant's interest is adequately protected by the provisions of the original land contract. See footnote four of this opinion.

III

Defendant also claims that the addendum was a personal covenant between plaintiff and defendant and, as such, does not represent an unreasonable restraint on alienation. Defendant has provided no authority for the proposition that a personal covenant cannot represent an unenforceable restraint on alienation. Further, because we have concluded above that the addendum is void as an unreasonable restraint on alienation, the issue whether the covenant is real or personal is moot.

IV

Defendant next argues that because the trial court found the addendum to be void as an *unenforceable* restriction of alienation and did not specifically use

the phrase "*unreasonable* restraint on alienation," the addendum is not void.

Findings of fact are sufficient if it appears that the trial court was aware of the issues in the case and correctly applied the law. *People v Smith,* 211 Mich App 233, 235; 535 NW2d 248 (1995). By finding that the addendum placed *unenforceable* restrictions on alienation, the trial court implicitly found the restrictions to be *unreasonable.* Because the trial court's opinion reveals that it was aware of the issues and correctly applied the law, the trial court's findings were sufficient.

v

Finally, defendant argues that he should not be required to give credit to plaintiff for land contract payments made by plaintiff to defendant's agent after defendant had revoked the agent's power of attorney. The trial court had ordered that such credit be given to plaintiff.

Generally, a principal may revoke the authority of his agent at any time, but the acts of an agent after his authority has been revoked may bind a principal as against third persons who, in the absence of notice of the revocation of the agent's authority, rely upon its continued existence. *Tousignant v Shafer Iron Co,* 96 Mich 87, 93-94; 55 NW 681 (1893). MCL 565.37; MSA 26.554 provides the following requirements for revoking a power of attorney to convey lands:

> No letter of attorney or other instrument so recorded, shall be deemed to be revoked by any act of the party by whom it was executed, unless the instrument containing such revocation be also recorded in the same office in which the instrument containing the power was recorded.

The parties do not dispute that defendant granted power of attorney to an agent, that his agent signed the land contract and addendum on defendant's behalf, and that defendant's agent received payments made by plaintiff pursuant to the land contract. Although defendant's agent acknowledges that her power of attorney was revoked, no evidence was presented with respect to when such revocation occurred or whether such revocation was properly recorded. Further, defendant's agent instructed plaintiff to continue making payments to her, knowing that her power of attorney had been revoked.

Defendant does not allege that he recorded a revocation of the power of attorney and has provided no evidence of his grant or revocation of the power of attorney. Defendant argues that because plaintiff received notice of the revocation, she should not be given credit for subsequent payments made to defendant's agent. However, defendant cites no authority for his position, nor does he address how such notice was provided to plaintiff. The testimony of plaintiff and defendant's agent indicates that defendant is relying on the letters he sent to plaintiff requesting that payments be made to him as notice of revocation of his agent's power of attorney. Because MCL 565.37; MSA 26.554 provides that no act of defendant other than recording his revocation would serve to revoke the power of attorney, a letter sent by defendant to plaintiff instructing her to send payments to defendant would not provide notice to plaintiff.

Because there is no evidence that defendant properly revoked the power of attorney or that plaintiff received notice of such revocation, the trial court did

not err in crediting to plaintiff all land contract pay-
ments made to defendant's agent.

Affirmed.