*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REYES GALVAN,

Plaintiff-Appellant,

and

MINHWA KIM,

Plaintiff,

v

YAM FOO POON, HWAI-TZU HONG POON, and
DANIEL Y. POON,

Defendants-Appellees.

UNPUBLISHED
August 19, 2021

No. 352559
Washtenaw Circuit Court
LC No. 17-001249-NZ

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

Plaintiff, Reyes Galvan, appeals by right the trial court's order granting defendants', Yam Foo Poon, Hwai-Tzu Hong Poon, and Daniel Y. Poon, motion for a directed verdict. We reverse and remand for further proceedings consistent with this opinion.

This case arises out of Galvan's[1] purchase of defendants' condominium unit in 2017. Prior to the purchase, plaintiffs had the home inspected. They also received a seller's disclosure form, which did not disclose any known problems with the unit, and so they made an offer, which defendants accepted. Plaintiffs received a warranty deed for the Ann Arbor property. Before moving in, Galvan painted and installed new flooring, but while doing so, he found staining on the drywall in the kitchen. Galvan contacted the condominium association and saw a number of records of previous maintenance visits for leaks and plumbing issues in the unit. Galvan also saw that one of defendants, Hwai-Tzu, had signed a unit modification responsibility form, which

---

[1] Minhwa Kim was a plaintiff in the proceedings below, but she is not a party on appeal.

showed that the upstairs walls had been moved and the neighboring unit encroached on Galvan's unit in the upstairs bathroom. Galvan hired a professional to remediate the moisture and mold found in the unit, and the company found that there was no firewall between Galvan's unit and the neighboring unit.

Galvan contacted the City of Ann Arbor and learned that the lack of a firewall "was a major hazard." The City of Ann Arbor's building department director sent Galvan a letter informing him that the Michigan building code required firewalls between units and that a previous owner of plaintiffs' unit had combined it with the neighboring units in 1984. It was unknown when the units were converted back into separate units, but Galvan learned that there were no firewalls between his unit and either of the neighboring units. In order to rebuild the firewalls between the units, one of plaintiffs' neighbors would need to lose square footage in their unit. As a result of the work that needed to be done on the condominium, plaintiffs moved into a separate apartment in September 2017.

In January 2018, the City of Ann Arbor sued plaintiffs and their two neighbors, seeking installation of firewalls between the units. The trial court ordered that Galvan pay $9,000 to bring one of the neighboring walls into compliance and $9,000 to the other neighbor in order to compensate her for the transfer of a portion of her unit to him, as was necessary in order to install the firewall. Plaintiffs did not have enough money to pay the total, so the condominium association placed a lien on the property until they paid it, which plaintiffs later did.

Plaintiffs thereafter sued defendants for fraud, misrepresentation, fraudulent concealment, silent fraud, innocent misrepresentation, breach of warranty, and loss of consortium due to the water issues, mold, and a lack of firewalls between units, which violated the City of Ann Arbor's building codes and condominium bylaws. Plaintiffs alleged that defendants accepted responsibility for the unit modifications, including the previous construction on the walls, and that defendants were aware of the water problems in the home yet failed to disclose the same.

The matter proceeded to trial and, at the end of the trial, defendants moved the court to hold as a matter of law that the building code violations did not constitute an encumbrance under the warranty deed. The trial court granted defendants' motion. Ultimately, the jury found that defendants failed to disclose material facts about the condition of the property and awarded damages for Galvan's economic losses and Kim's noneconomic losses. Plaintiffs moved the trial court for reconsideration on the directed verdict, and the trial court denied the motion on the basis that plaintiffs "failed to demonstrate a palpable error." This appeal followed.

Galvan argues that the trial court erred when it held that the building code violation was not an encumbrance. We agree.

This Court reviews de novo questions of law. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 223; 755 NW2d 686 (2008). This Court also reviews de novo a trial court's decision on a motion for a directed verdict. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 455; 750 NW2d 615 (2008). "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Aroma Wines & Equip, Inc v Columbian Distrib Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015).

Further, this Court reviews de novo questions of statutory interpretation. *Oakland Co Bd of Co Rd Comm'rs v Mich Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). When reasonable mind may differ regarding the statutory term's meaning, judicial construction is appropriate. *Adrian School Dist v Mich Pub Sch Employees' Retirement Sys*, 458 Mich 326, 332; 582 NW2d 767 (1998).

Defendants transferred title of the property to plaintiffs under a warranty deed. MCL 565.151 governs warranty deeds and provides that a seller warrants that he or she "guarantees the quiet possession [of the real property]; that the same are free from all incumbrances, and that he will warrant and defend the title to the same against all lawful claims." Black's Law Dictionary (11th ed) defines an encumbrance[2] as a "claim or liability that is attached to property or some other right and that may lessen its value, such as a lien or mortgage; any property right that is not an ownership interest." An encumbrance includes anything which "constitutes a burden upon the title . . . " including a "right-of-way, . . . a condition which may work a forfeiture of the estate, . . . a right to take off timber, . . . a right of dower. . . . In short, every right to, or interest in the land, to the diminution of the value of the land. . . ." *Darr v First Fed Sav & L Ass'n of Detroit*, 426 Mich 11, 20; 393 NW2d 152 (1986), quoting *Post v Campau*, 42 Mich 90, 94; 3 NW 272 (1879).

Through the warranty deed, defendants were obliged to convey marketable title to plaintiffs. "Marketable title is one of such character as should assure to the vendee the quiet and peaceful enjoyment of the property, which must be free from incumbrance." *Madhavan v Sucher*, 105 Mich App 284, 287-288; 306 NW2d 481 (1981). "A title may be regarded as unmarketable if a reasonably careful and prudent man, familiar with the facts, would refuse to accept the title in the ordinary course of business." *Bartos v Czerwinski*, 323 Mich 87, 92; 34 NW2d 566 (1948).

Here, the violation of the building code ordinance constituted an encumbrance on the title as it immediately opened plaintiffs up to the risk of litigation and made their home unlivable and unmarketable. See *Praegner v Kinnebrew & Ratcliff*, 156 La 132, 136; 100 So 247 (1924) (explaining that the buyer "agreed to purchase the property and not the property plus a probable lawsuit").[34] Indeed, because of the building code violations, the City of Ann Arbor brought suit against plaintiffs. Ultimately, plaintiffs were forced to pay $18,000 in order to replace the firewalls and $27,160 for an architect. Mark St. Dennis, a real estate appraiser qualified as an expert, testified at trial that the estimated total cost of the violation was $30,000. The condominium association put a lien on plaintiffs' property because they could not afford the total cost. Although

---

[2] We using the modern spelling of "encumbrance" rather than the archaic spelling "incumbrance" in all instances other than when directly quoting a source using the archaic spelling.

[3] Although not binding, authority from other jurisdictions may be considered for its persuasive value. *Estate of Voutsaras v Bender*, 326 Mich App 667, 676; 929 NW2d 809 (2019).

[4] See also, *Lohmeyer v Bower*, 170 Kan 442, 448; 227 P2d 102 (1951), in which the Kansas Supreme Court explained that a home that violated different ordinances and restrictions on the date of conveyance, "so encumber[ed] the title to [the home] as to expose the party holding it to the hazard of litigation and ma[d]e such title doubtful and unmarketable." *Id*. at 452.

plaintiffs eventually paid the cost and the lien was removed, this evidences the vulnerability of plaintiffs' right to their property as a result of the building code violation.

Further, St. Dennis testified that a family would not purchase that home to live in because a buyer would not be able to move into the home with these violations. See, e.g., *Bethurem v Hammett*, 736 P2d 1128, 1132 (Wy, 1987) (stating that there is "overwhelming authority for the proposition that title is unmarketable where it cannot be readily sold to a reasonably prudent person, familiar with the facts" and holding that a title was unmarketable when the extent of the encroachments would have led a reasonably prudent person to not buy the property). In fact, plaintiffs were forced to rent a separate apartment while the issues were resolved. Because of the violations and resulting costs, Galvan did not receive a property that was free of encumbrances, despite the warranty deed's guarantee that the property was free from encumbrances and that the seller would defend and pay for losses resulting from defects in the title. See MCL 565.151.

Other jurisdictions have considered similar issues. In *Oatis v Delcuze*, 226 La 751, 757; 77 So2d 28 (1954), for example, the Supreme Court of Louisiana explained that the "mere existence of the zoning regulations under the ordinance does not of itself create an encumbrance on the title to the property," but that it was the "violation of the restrictions imposed by the ordinance that affects the merchantability of the title." Similarly, in *Moyer v De Vincentis Const Co*, 107 Pa Super 588, 592; 164 A 111 (1933), the Superior Court of Pennsylvania held in favor of the buyer of a property that violated a zoning ordinance because the seller "agreed to furnish a good and marketable title free from liens and incumbrances" and the buyer "could not take possession without immediately becoming a violator of the law and subject to suit." On a different basis, in *Garrison v Berryman*, 225 Kan 644, 648; 594 P2d 159 (1979), the Supreme Court of Kansas affirmed the rescission of a contract for the sale of real property on the basis of mutual mistake because both parties knew the purpose of the sale of the land and it was later discovered that the buyer could not build on it.

The issue at hand was not whether defendants knew about or were liable for the violations, but whether the violation was an encumbrance, which it was. See *Post*, 42 Mich at 94. Plaintiffs, therefore, did not receive title to a property that was free from encumbrance and that allowed them "quiet and peaceful enjoyment of their property." *Madhavan*, 105 Mich App at 287-288. Thus, the trial court erred by directing the verdict in defendants' favor. See *Silberstein*, 278 Mich App at 455.

Reversed and remanded. We do not retain jurisdiction.


/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens