### McDONALD v. McDONALD.

1. APPEAL AND ERROR—SEPARATE MAINTENANCE—POLICEMAN'S PEN-SION—RECEIVERS.

Question as to whether pension of former city policeman was properly the subject of a· receivership on petition of wife who had obtained a decree of separate maintenance is considered by Supreme Court, notwithstanding possibly not technically before the Supreme Court for determination, where it appears to be of a jurisdictional nature and is spiritedly argued by both parties in their briefs.

2. HUSBAND AND WIFE—SEPARATE MAINTENANCE—RECEIVERS—NO-TICE.

Husband in separate maintenance suit *held*, under record presented, to have been properly served with notice of receivership proceedings under court rule and to have had actual and ·timely notice thereof (Court Rule No 8 [1945]).

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 820 *et seq.*
[2] 27 Am Jur, Husband and Wife § 420.
[4] 45 Am Jur, Receivers § 18.
[5] 22 Am Jur, Exemptions § 86.

3. Attorney and Client—Appearance—Separate Maintenance.

The general appearance of an attorney in a suit for separate maintenance may not be attacked for invalidity after entry of decree in the absence of a timely withdrawal thereof of record before later service of notice of subsequent proceedings.

4. Equity—Receivers.

A court of equity has inherent power to appoint a receiver in a proper case to implement and enforce its decrees and orders.

5. Pensions—Exemptions—Garnishment—Attachment.

The purpose of the exemption of a pension from attachment, garnishment and bankruptcy proceedings is to relieve the person and his dependents from the pressure of claims that are hostile to their essential needs.

6. Husband and Wife—Separate Maintenance—Public Policy—Policeman's Pension—Receivers.

Provisions of city charter exempting policeman's pension, annuity and retirement funds from garnishment, attachment and bankruptcy or insolvency proceedings and providing they shall be unassignable are no legal bar on ground of public policy to the appointment of a receiver to collect a retired policeman's pension payments in order to pay sums awarded for support of wife and minor children in decree for separate maintenance (CL 1948, § 552.27; Detroit Charter, title 9, ch 7, art 9, § 1).

7. Same—Separate Maintenance.

Trial court's refusal to modify decree as to sum awarded for support of wife and minor children in suit for separate maintenance is not disturbed under evidence presented.

8. Costs—Two Appeals—Public Question.

No costs are allowed in husband's second appeal from orders made in separate maintenance suit subsequent to decree, where costs are allowed in first appeal and there appears to be no real contest presented in second appeal and a question of public interest is involved.

Appeals from Wayne; Brennan (John V.) and Rashid (Joseph G.), JJ. Submitted October 8, 1957. (Docket Nos. 11, 87, Calendar Nos. 47,260, 47,272.) Decided March 6, 1958.

Bill for separate maintenance by Eileen McDonald against Hugh McDonald. Decree for plaintiff. Re-

ceiver appointed to collect and administer pension retirement payments due defendant as a former Detroit policeman. Separate motions to set aside order for receiver denied. Defendant appeals. Affirmed.

*Frazer & Popkin* (*Hiram Y. Popkin,* of counsel), for plaintiff.

*Davidow & Davidow* (*Larry S. Davidow,* of counsel), for defendant.

Voelker, J. Even before the decree was entered in this divorce "from bed and board" case, the defendant husband had taken off for Canada, ostensibly, as he claims, for his health and to visit relatives, but really, as the plaintiff claims, so that he might avoid and evade meeting his responsibilities for the support of the plaintiff and their minor children under the terms of the anticipated decree. Two appeals of the defendant will be disposed of in this opinion, as hereafter noted. Many of the facts, as above indicated, are sharply disputed, but, whatever the motives and intentions of the defendant, under the record the following seems both clear and undisputed:

A decree of separation from bed and board and for separate maintenance was entered in favor of the plaintiff on December 30, 1953 (more than 3 years after the cause was commenced) ; among other things it provided for the support of 3 minor children at the rate of $11 per week for each child and $25 weekly for the support of the wife; and it also provided for the payment of an arrearage in excess of $2,000 in temporary alimony and support. The decree also provided that the money provisions therein should constitute a lien upon the real and

personal estate of the defendant under the statute hereinafter cited.

The defendant paid nothing and on February 18, 1954, the plaintiff filed her petition for the appointment of a receiver, alleging defendant's continuing arrearage and nonpayment; that before the decree the defendant had moved to Canada; that, as a retired policeman, he was receiving approximately $190 monthly from the Detroit Police Protective Association in the nature of a pension. The petition prayed that the friend of the court be appointed receiver to collect these monthly pension checks and apply the proceeds to current and back alimony and support. Petitioner also prayed that she might serve the absent defendant in such proceeding under Court Rule No 8 (1945).

An order was entered below authorizing service upon the defendant at his last known address and, also, upon his attorney of record in the separation proceedings, and in due course proof of service was filed. On March 22, 1954, the court below granted the main prayer of the petition and appointed the friend of the court receiver to collect the monthly checks "due the defendant from the Detroit Police Protective Association" and apply the proceeds as prayed in the petition.

Subsequently and on August 5, 1954, the defendant by his present attorneys filed a petition to set aside the appointment of the receiver and to modify the decree, alleging that he had merely visited Canada, being compelled to leave Detroit because of ill health and inability to work and lack of funds; that he had not received proper notice of the petition for the appointment of a receiver; that he had never lived at the Detroit address where the notice thereof was sent him; and that his former attorney was then no longer his attorney, having been retained only until the entry of the decree; that no

proper service having been made on him the court lacked jurisdiction to appoint a receiver; and that he was ill and destitute and without funds and that the order appointing the receiver should be set aside and the decree modified. To this petition he appended a statement from his physician concerning his various maladies and inability to work.

Plaintiff filed an answer of general denial, alleging that the defendant stated before he left Detroit that he would never pay a dollar to the plaintiff and that he would live on "skid row" before he would comply with the court's order as to alimony and support. Her answer also alleged that defendant had proper notice and full and timely knowledge of the receivership petition prior to the order of appointment.

On March 30, 1956 (some year and a half after the last foregoing petition and answer were filed), following a rather extensive hearing at which the defendant appeared and testified, an order was entered denying defendant's petition to set aside the order appointing the receiver and to modify the decree. From this action the defendant appealed here, which we may call Appeal Number 1. On July 20, 1956, defendant by the same new attorneys filed what he calls a motion to set aside the order appointing the receiver, repeating his claim about the failure of proper service and lack of jurisdiction, and, for the first time, at least formally, raising the claim that he should further prevail:

"Because pensions and retirement payments to which the defendant may be entitled are not subject to sequestration or execution or receivership or any other order of any court by reason of section 1, article 9, charter amendment No 24 of the charter of the city of Detroit,* which provides:

_____

* Charter of the city of Detroit, title 9, ch 7, art 9, § 1 (Municipal Code, city of Detroit, 1954, Charter section, p 262).—REPORTER.

" 'The right of a person to a pension, an annuity, or a retirement allowance, to return of contributions, the pension, annuity, or retirement allowance itself, any optional benefit, any other right accrued or accruing to any person under the provisions of this amendment and the moneys in the various funds created by this amendment shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law, or any other process of law whatsoever and shall be unassignable except as in this amendment specifically provided.' "

This motion came on to be heard before a new judge, the old judge having since retired, and on February 27, 1957, the court made the following order:

"The motion in the above entitled cause asking to set aside order appointing receiver having come on for hearing before this honorable court and the court being advised by counsel for the moving party that an appeal in this matter had been taken to the Supreme Court and that the fee required by law for taking such an appeal had been paid.

"Now therefore, it is ordered that the motion to set aside order appointing receiver be and the same is hereby dismissed, this court having no jurisdiction in said matter."

From this order the defendant has likewise appealed here, which appeal is not contested and which we may call Appeal Number 2. Further facts will be given as this opinion proceeds.

Some question comes to our mind whether the "pension" question has been properly brought before us by these appeals. While the appellee does not contest the second appeal (where this question is squarely sought to be raised) both she and appellant nevertheless spiritedly argue the proposition in their briefs on the first appeal. Furthermore the question appears jurisdictional enough in its nature so that

we might treat it as properly presented, whether raised below or for the first time here. In addition the question seems not to be clearly settled in this State and we believe it well that it should be. But before we launch on that perplexing problem we believe we should first dispose of the claim of appellant that he did not receive proper notice of the petition for the appointment of the receiver and that therefor the court below lacked jurisdiction to appoint any receiver—that is, that he lacked basic jurisdiction or authority to appoint any receiver entirely aside from any prickly pension question.

On this score the record discloses that at the time of the hearing on the plaintiff's petition for the appointment of a receiver a representative appeared from the office of the defendant's first attorney, during which this exchange took place:

"*Mr. Gruss:* Your Honor, I am from Mr. Harry Kent's office, who was the attorney for the defendant husband in this case; and Mr. Kent was served with the petition for appointment of receiver in this matter, and after communicating with the husband by mail and by 'phone, the husband told Mr. Kent that he did not wish to retain him in this matter, and, therefore, we just want to make that statement on the record.

"*The Court:* Very well.

"*Mr. Frazer:* Counsel, then there is no doubt in your mind that Mr. McDonald has received the copies of the petition, and has full knowledge of this proceedings?

"*Mr. Gruss:* I would say that is true."

At the later hearing on his petition to set aside this appointment, the defendant in his testimony hedged on this score, but we are satisfied from this record that the defendant was properly served with notice of the receivership hearing under Court Rule No 8 (1945) and further that he had actual and

timely advance notice of these proceedings. Litigants in these kinds of cases cannot defeat the processes and decrees of our courts by leaving the jurisdiction and then abruptly "firing" their attorneys of record when they learn the heat is on and then later popping up with a new brace of attorneys seeking to set aside what was done. If attorneys in these "domestic relations" cases are to serve only to decree we think this fact should affirmatively and timely appear of record in the case, and in any event the validity of a general and unwithdrawn appearance of an attorney cannot for the first time be attacked under such circumstances as attempted in this case. We agree with the court below that the defendant had due and timely notice and service of the petition for appointment of a receiver both in fact and under the cited court rule. In any case on this score this particular defendant appears to have finally had his ultimate day in court and fully aired all his various grievances and claims.

But, argues the appellant, in any event the applicable alimony statute (CL 1948, § 552.27 [Stat Ann 1957 Rev § 25.105]) does not apply to this situation; receivers may be appointed thereunder to sequester only the husband's real or personal estate (of which he claims he had none) and does not and may never apply to whatever nebulous interest he may have in his police pension, especially in view of the quoted provisions of the Detroit city charter. The cases cited by appellant (*Wyrzykowski* v. *Budds,* 324 Mich 731; and *O'Connell* v. *Dearborn Police and Fire Pension Board,* 334 Mich 208) scarcely dispose of the question; the first has to do with the narrow question of the garnishability of a police pension by a stranger; the second is even less in point and contains language arguably as harmful to appellant's claim as it is helpful. In any case, statute or no statute, we cannot doubt the inherent right of a court of equity to

appoint a receiver in a proper case to implement and enforce its decrees and orders. We think this is a proper case. This still leaves us with the knotty problem of whether such a receiver (conceding in other respects the legality of his appointment) may successfully reach the pension of the appellant in view of the sweeping exemption provisions of the Detroit city charter.

The precise question has apparently never before been decided by this Court and no Michigan cases are found squarely in point. Other States have been more fortunate. The question has arisen in Wisconsin in a case in some respects peculiarly similar to ours. The case is *Courtney* v. *Courtney*, 251 Wis 443 (29 NW2d 759). There there was also a divorce from bed and board; there the defendant was a Milwaukee policeman who retired and moved away out of the State and likewise did not pay his alimony; there the Milwaukee charter elaborately provided that the policemen's annuity and benefit funds should be exempt from attachment or garnishment and, also, from any and all debts, claims, damages, demands, judgments or executions of or against any annuitant, in language every bit as sweeping as that in the Detroit charter; and there the claim was likewise made that the fund could not be reached to satisfy allowances for alimony.

In ruling against such claim the Wisconsin court quoted from 17 Am Jur, Divorce and Separation, § 641, p 490, as follows:

"There seems to be no doubt that a claim for alimony may be enforced by the court against any exemptions which the statute grants the husband, if the court provides for such enforcement in its decree. * * * The tendency seems to be to deny the applicability of the exemption statutes to such claims, unless the language of such a statute is so explicit as to make it certain that the legislature

intended to give the husband the benefit of his exemptions against the wife's claim for alimony."

The court then reviewed similar cases in its and other jurisdictions (Wis pp 448, 449; NW p 761) and had this to say (p 449; p 762):

"Underlying these decisions is the reasoning that the funds involved, pension funds and disability insurance, are created for the protection, not only of the employee or insured, but for the protection of his family.  Similarly, the purpose of exemptions is to relieve the person exempted from the pressure of claims that are hostile to his and his dependents' essential needs.  Keeping those purposes in mind, it becomes clear that the Policemen's Annuity and Benefit Fund of Milwaukee is within the reach of a process of the court when it is an alimony judgment that is sought to be enforced.  From this fund the court is able to provide collection of the alimony due the dependent wife."

In concluding the court said as follows (p 453; p 763):

"The court in a divorce proceeding is authorized to make and award such judgments, decrees and orders as justice may require and issue execution and other writs and processes as may be necessary to carry into effect the powers given by statute.  *  *  *  Any of the means of enforcement customarily employed by courts of equity which would be appropriate to the facts of this case is available to the divorce court to enforce its amended judgment of January 11, 1943."

We find that our "alimony enforcement" statute, heretofore cited, is, in many respects, similar to the companion Wisconsin statute* considered by the court in the above case.  We should add that that case was reversed and remanded on grounds

---

* See, currently, Wis Stats, 1955, §§ 247.29, 247.30.—Reporter.

which need not here concern us, more than to say that it did not detract from the positions and language above taken and quoted.

In citing and quoting from this Wisconsin case we do not mean to indorse and approve everything that was said there. The writer of this opinion would much rather ground our holding squarely on that dependable old friend of the judge in a quandary, public policy, and instead come out and state flatly that we cannot and will not swallow or abide such a state of affairs. In a collision between our alimony collection statute and the exemption provision of the Detroit city charter we hold that the charter must bow. Fine spun legal fictions raising nice distinctions between so-called "hostile" claims of strangers and those of one's divorced or judicially-separated wife and minor children seem rather artificial, however, particularly under a record that fairly bristles with unfeigned rancor and hostility. In any case, whatever the proper rationale, we hold that the quoted provisions of the Detroit city charter are no legal bar to the appointment of a receiver here or to his collection and disbursement of the police-pension payments in accordance with the court's order.

We do not propose to grapple extensively with the remaining companion question of whether or not the decree should have been modified more than to say that under this record the need of the wife and children clearly existed and that there was both competent and abundant evidence to support the court's refusal to modify. We see no compelling reason to change the result.

As for the defendant's second appeal, in view of what we have already said, the grounds for it would seem to have pretty well evaporated. Whether the reasons depended on by the court below in rejecting the defendant's last motion were pre-

cisely sound or not (which we do not pass on) we think that under this record he clearly reached a right result, and that is the main thing. The orders and actions of the court below are affirmed, with costs in the first appeal to the plaintiff. No costs will be allowed in the second appeal because there was no real contest and further because a question of public interest is involved.

Dethmers, C.J., and Carr, Kelly, Smith, Black, and Edwards, JJ., concurred.

Kavanagh, J., took no part in the decision of this case.