*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLARENCE W. BROWN, JR., M.D.,

      Plaintiff-Appellant,

v

VASSILIOS A. DIMITROPOULOS, M.D.,
MEDPROP, UNIVERSITY DERMATOLOGY,
DARIENMED, ST. JOSEPH DERMATOLOGY,
LLC, SKOKIE MED, and STAMATIS A.
DIMITROPOULOS,

      Defendants-Appellees.

UNPUBLISHED
June 11, 2020

No. 347220
Berrien Circuit Court
LC No. 16-000109-CB

Before: K. F. KELLY, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

In this dispute involving the dissolution of business entities associated with a joint dermatology practice, plaintiff, Clarence W. Brown, Jr., M.D., appeals as of right the trial court's order requiring $298,869 in reimbursement to be paid to defendant, Vassilios A. Dimitropoulos, M.D., for electronic medical records that plaintiff had obtained and used after the medical records had been sold to defendant. On appeal, plaintiff primarily argues that the trial court lacked the authority to grant the relief under MCR 2.612(C)(1). Finding no errors warranting reversal, we affirm. This appeal is decided without oral argument. MCR 7.214(E)(1)(b).

## I. BASIC FACTS

Plaintiff and defendant operated their practices known as St. Joseph Dermatology, LLC, and University Dermatology through five entities. The practices used a business, Cerner, to manage and maintain all their patient records in an electronic format that was accessible to either doctor at any location. Testimony and evidence established that Cerner provided the doctors with the ability to search patient demographics—such as names and addresses—through one application, and to review a patient's medical records through another application.

Plaintiff sued for dissolution in May 2016. He alleged that he and defendant were incapable of agreeing on material matters respecting the management of the entities. In June 2016, the trial

-1-

court appointed a receiver, Amicus Management, Inc., to assist it in dissolving the entities. The trial court required the receiver to sell the property owned by the entities in lots—one for each entity. It required the receiver to offer the lots first to plaintiff and defendant and, if the doctors did not purchase any lot, the court instructed the receiver to sell the lot to the general public.

In October 2016, the receiver moved to establish the auction procedures. The parties drafted the proposed order governing the auction procedures, but they could not agree on some final points, which the trial court resolved after a hearing. The trial court signed the order governing the auction procedures (the Auction Order) on the same day as the hearing. Paragraph four of the order provided:

> Each party will be permitted to retain a copy of the patient database. Any office computer software utilized by a practice location that is part of one of the personal property Lots described above in Paragraph 3 shall be transferred with the applicable Lot sold to the Successful Bidder. Any software utilized by all practice locations in common shall be included as part of the personal property of a Lot as designated by the Receiver. The Successful Bidder (or Backup Bidder if applicable) for a particular personal property Lot shall have the exclusive right and permit to utilize the phone numbers, websites and business entity names associated with the particular personal property Lot after the closing of the sale.

Defendant subsequently purchased the lots that included all the personal property of the practices. After he purchased these lots, defendant prevented plaintiff from obtaining a copy of the patient medical records from Cerner.

In December 2016, plaintiff asked the trial court to enforce his right to "retain a copy of the patient database" as stated in ¶ 4 of the Auction Order. The trial court agreed that plaintiff had the right to obtain a copy of the medical records, and, in February 2017, it ordered the receiver to cause Cerner to migrate the patient database to a separate database for plaintiff.

In June 2017, defendant filed two motions for summary disposition. He argued that he purchased all the personal property of the former practices at the auction and that the personal property included the patients' medical records. He further maintained that the phrase "the patient database" used in ¶ 4 of the Auction Order did not refer to the medical records maintained by Cerner; rather, the phrase referred solely to the patient demographics, which plaintiff already had.

In August 2017, the trial court denied defendant's motions for summary disposition in part because it determined that ¶ 4 of the Auction Order was ambiguous and that the ambiguity had to be resolved after an evidentiary hearing.

In October 2017, defendant moved to set aside the auction sale of the three lots involving the former practices' personal property under MCR 2.612(C)(1). Defendant's request for relief was premised on his belief that the sale of the entities' personal property included the medical records, and he was either mistaken or induced to believe that through the receiver's fraud or misrepresentations. Defendant alleged that he paid substantially more for the personal property than he would have paid had he known that the medical records were not included.

At the evidentiary hearing to resolve the ambiguity, the trial court ultimately found that the phrase "the patient database," as used in the Auction Order, referred to the patient demographics alone, and not the patient medical records. Because defendant was the winning bidder on all the personal property, the court found that defendant owned the patient medical records. The court recognized that, despite the fact that defendant purchased the medical records, plaintiff was provided with a complete copy of the medical records. This, the court opined, was a "mistake"— "[a] mistake justifying some relief under" MCR 2.612(C)(1)(a).

The trial court determined that defendant was entitled to compensation for the medical records that had been transferred to plaintiff despite the fact that defendant was the winning bidder. The court found that the value of the medical records was the difference between the minimum bids for each lot, which had been calculated using a fraction of the fair market value of the listed assets, and the final winning bids. After a clerical correction, the court ordered that defendant be compensated $298,869 for the medical records. The court also determined that plaintiff should be responsible for the $40,000 expense associated with migrating the medical records to his new practice. Following the denial of plaintiff's motion for reconsideration by a successor trial judge, he appeals.

## II. MCR 2.612(C)(1)

### A. STANDARDS OF REVIEW

Plaintiff argues on appeal that the trial court erred in several respects when it granted defendant's request for relief under MCR 2.612(C)(1). Plaintiff's claims of error involve an underlying equitable action for dissolution, *Madugula v Taub*, 496 Mich 685, 710; 853 NW2d 75 (2014), and the trial court's equitable power to appoint a receiver, *McDonald v McDonald*, 351 Mich 568, 575-576; 88 NW2d 398 (1958). This Court reviews de novo a trial court's equitable decrees. *White Lake Twp v Amos*, 371 Mich 693, 700; 124 NW2d 803 (1963). "When reviewing equitable actions, this Court employs review de novo of the decision and review for clear error of the findings of fact in support of the equitable decision rendered." *LaFond v Rumler*, 226 Mich App 447, 450; 574 NW2d 40 (1997). A trial court's factual findings are considered clearly erroneous where this Court is left with a definite and firm conviction that a mistake has been made. *Id.*

This Court also reviews de novo the trial court's interpretation and application of the court rules. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012). However, this Court reviews for clear error the trial court's factual findings underlying its application of the court rules. *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 387; 761 NW2d 353 (2008).

This Court reviews for an abuse of discretion a trial court's decision to exercise its authority to grant relief under MCR 2.612(C)(1). *Heugel v Heugel*, 237 Mich App 471, 478; 603 NW2d 121 (1999). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

### B. AUTHORITY TO GRANT RELIEF

Plaintiff first submits that the trial court could not apply MCR 2.612(C)(1)(a) to reform the Auction Order on the basis of defendant's unilateral mistake. We disagree because this argument relies on a false premise—namely, that the trial court reformed the Auction Order.

After defendant moved for summary disposition, the court determined that there was an ambiguity in the Auction Order, which implicated the sale of the personal property held by the practices. The trial court conducted an evidentiary hearing to resolve the ambiguity, but it also addressed defendant's request for relief under MCR 2.612(C)(1). The trial court issued an opinion after the hearing, and it is evident from the trial court's discussion of the issue and evidence that it did not reform the Auction Order—it resolved the ambiguity in the Auction Order. Then the trial court addressed defendant's request for relief from judgment under MCR 2.612(C)(1) by examining the ramifications of the resolution. The trial court concluded that the bills of sale for the personal property sold at auction provided that the sale included all physical assets of the practices in addition to " 'all other assets collectively used to operate the practice . . . .' " Given the broad language of the bills of sale, the court recognized that defendant purchased the complete Cerner records when he became the winning bidder of the practices' personal property. It followed that plaintiff was not entitled to retain a separate copy of those records under the Auction Order. The court then noted an apparent mistake caused by the ambiguity: "Sometime after the sale was closed, [plaintiff] was provided a complete copy of the electronic medical records. The ambiguity herein resolved, this then was a mistake. A mistake justifying some relief under MCR 2.612(1)(a)."

However, over a year earlier, the trial court ordered the receiver to have Cerner provide plaintiff with a copy of the medical records. The trial court ordered the transfer because it assumed that the Auction Order provided plaintiff with the right to a copy. After the trial court resolved the ambiguity in the Auction Order, it was clear that the trial court's earlier order was improper because it was premised on a mistaken understanding of the meaning of the phrase "the patient database." When examined in this context, the record demonstrates that the trial court's reference to "this then was a mistake" referred to its order compelling the transfer of the medical records. It was that mistake—the entry of an order transferring defendant's property to plaintiff—that the trial court determined warranted relief under MCR 2.612(C)(1)(a).

The trial court did not take any action to reform or alter the Auction Order. It also did not provide defendant with relief from the Auction Order under MCR 2.612(C)(1); it ordered relief from the order that compelled the transfer of the electronic records, which was entered in February 2017. Consequently, plaintiff's argument that the trial court could not use MCR 2.612(C)(1)(a) to reform the Auction Order or otherwise "renegotiate voluntarily executed contracts" is inapposite. Properly framed, the question is whether the trial court had the authority under MCR 2.612(C)(1)(a) to provide defendant with relief from the order compelling the receiver to have Cerner provide plaintiff with a copy of the patient medical records.

In his motion for relief from judgment, defendant argued that he was entitled to have the sale of the practices' personal property set aside because, in part, he was misled to believe that he was purchasing the exclusive right to the medical records. Defendant's failure to specifically argue that the trial court itself made a mistake did not preclude relief when he generally argued that his purchase of the exclusive right to the medical records had been devalued as a result of plaintiff's access to the records and claimed that the loss of value warranted setting aside the auction sale

under MCR 2.612(C)(1). After resolving the ambiguity in the Auction Order, the trial court concluded that defendant had in fact purchased the exclusive right to the patient medical records. Stated another way, the trial court determined that defendant had not been mistaken about what he was purchasing. Nevertheless, because plaintiff had been provided a copy of the medical records, the trial court realized that defendant had partially lost the value of his purchase. For that reason, the court justified providing relief to defendant under MCR 2.612(C)(1)(a).

MCR 2.612(C)(1)(a) grants trial courts the authority to provide relief from a "final judgment, order, or proceeding" "on just terms" as a result of "[m]istake, inadvertence, surprise, or excusable neglect." MCR 2.612(C)(1)(a). MCR 2.612(C)(1) provides "flexibility in the power of the court to modify judgments, thereby allowing courts to further the aims of substantial justice." *Kaleal v Kaleal*, 73 Mich App 181, 191; 250 NW2d 799 (1977). MCR 2.612(C)(1) broadly operates to grant trial courts the authority to relieve parties from the effects of not only final judgments, but also orders and proceedings, on terms that are just. However, this rule should be applied only in "extraordinary circumstances" where the failure to grant relief would "result in substantial injustice." *Lark v Detroit Edison Co*, 99 Mich App 280, 283; 297 NW2d 653 (1980). To the extent that the trial court's February 2017 order improperly devalued the property purchased by defendant at the auction sale, the case involved an extraordinary circumstance for which the failure to grant relief would result in a substantial injustice. MCR 2.612(C)(1).

Accordingly, although the trial court ordered that plaintiff had a right to retain a copy of the patient medical records, it subsequently examined the precise language of the Auction Order, found that it was ambiguous, took testimony on its meaning, and concluded that it was a mistake to provide plaintiff with a copy. A trial court's own mistake can serve as a ground for granting relief under MCR 2.612(C)(1)(a). *Altman v Nelson*, 197 Mich App 467, 477; 495 NW2d 826 (1992). Because the trial court ordered the receiver to cause Cerner to provide plaintiff with a copy of the patient medical records on the mistaken assumption that the phrase "the patient database" referred to all the records maintained by Cerner, it had the discretion to correct that mistake under MCR 2.612(C)(1)(a).

## C. INTERPRETATION OF PRIOR ORDERS AND AGREEMENTS

Plaintiff also maintains that the trial court misconstrued the phrase "the patient database" when it found that the phrase referred to patient demographics alone particularly where it "contradicts the court's prior orders, the parties' agreements, and essentially all the contemporaneous surrounding circumstances." Again, we disagree.

Before submitting the Auction Order to the trial court for approval, the parties chose to include a provision that each doctor was entitled to "retain a copy of the patient database", even though the auction would otherwise include the sale of all the software utilized by the practices. The parties did not define "the patient database," and the reference was not on its face evident.[1] The modern understanding of the term "database" refers to a large collection of data organized for fast retrieval by a computer, *Merriam-Webster's Collegiate Dictionary* (11th ed), and the use of

---

[1] Apparently, the parties, not merely the receiver, was involved in the terminology used in light of the doctors' knowledge of the nature of the business and Cerner's role.

"the" definite article suggests that it referred to a specific electronic database. *Robinson v Lansing*, 486 Mich 1, 14; 782 NW2d 171 (2010). Therefore, on its face, the phrase indicated that both doctors would be able to retain a copy of a particular digital database held by the practice even if he was not the successful bidder for the practices' personal property.

The phrase amounted to a latent ambiguity that was only revealed when the parties tried to apply or execute the phrase. *Shay v Aldrich*, 487 Mich 648, 668; 790 NW2d 629 (2010). Plaintiff's attempt to enforce the Auction Order did not reveal the ambiguity because plaintiff presented his motion as though the phrase plainly referred to all the data maintained by Cerner. The ambiguity only became apparent when defendant filed a brief in opposition to plaintiff's second motion to enforce the Auction Order in March 2017. Before that point, the trial court could not have known that Cerner maintained more than one dataset for the practices and that the datasets were accessible through different applications such that the phrase "the patient database" might be applicable to a particular subset of data involving patients.

On appeal, both parties reiterate their respective positions presented in the lower court regarding whether the Auction Order was ambiguous in light of the facts and circumstances. However, given the dispute over the proper construction of the phrase, the trial court did not err when it determined that it was ambiguous, and that the ambiguity could only be resolved after hearing all the evidence. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 469; 663 NW2d 447 (2003). Because the parties did not offer earlier the extrinsic evidence to address the latent ambiguity, the trial court did not have the opportunity to properly construe the phrase. The trial court's subsequent resolution of the ambiguity did not contradict the previously entered orders. Rather, its resolution of the ambiguity revealed that the premise underlying its earlier order was mistaken.[2]

## D. RESOLUTION OF THE AMBIGUITY

Plaintiff contends that the trial court also clearly erred when it found that the phrase "the patient database" referred only to the patient demographics and not to the patient medical records. We disagree.

At the evidentiary hearing, the receiver, plaintiff, and defendant each testified regarding their interpretation and understanding of the Auction Order as well as the data maintained by Cerner. Further, these witnesses were entitled to present and comment on email exchanges and to argue the import of the documentary evidence. However, the issue before the trial court was largely a matter of credibility, and the trial court found defendant's interpretation to be credible. This Court generally defers to the trial court's superior ability to judge credibility. MCR 2.613(C). On this record, we are not left with the definite and firm conviction that the trial court clearly erred

---

[2] We also reject plaintiff's contention that the language of the sales agreements precluded relief because defendant purchased the assets "as is" and in reliance upon his own due diligence. The trial court was entitled to determine that an ambiguity existed regarding what was included in the sale. *Shay*, 487 Mich at 668.

when it found that the phrase "the patient database" referred to the patient demographics and not to all the data maintained by Cerner on behalf of the practices. *LaFond*, 226 Mich App at 450.

## E. UNILATERAL MISTAKE AND OTHER RELIEF

Plaintiff also raises several additional reasons that he claims demonstrate that the trial court lacked the authority to grant the relief requested. He first argues that defendant never raised mistake as a ground for relief from an order under MCR 2.612(C)(1)(a), and therefore, the trial court could not grant defendant relief under that subsection.

In his motion for relief from judgment, defendant cited MCR 2.612(C)(1) as a ground for relief. He specifically argued fraud and other misconduct that would warrant relief under MCR 2.612(C)(1)(c) and (f). The trial court ultimately did not reach the merits of that claim because it determined that defendant had in fact purchased the medical records. The trial court also understood that defendant had argued that he purchased the exclusive right to the practices' medical records and that plaintiff's subsequent access to the medical records had devalued his purchase, which, he argued, generally warranted relief under MCR 2.612(C)(1).

Once the trial court reached the conclusion that defendant had purchased the exclusive right to the medical records, it properly considered if defendant was entitled to any other relief implicated by its finding. Moreover, counsel for defendant argued at the hearing that one possible resolution of the dispute would be to compensate defendant for that portion of the purchase price that could be attributed to the purchase of the medical records. The trial court eventually agreed that that was an equitable solution.[3]

Plaintiff also maintains that the trial court could not rely on defendant's unilateral mistake as a ground for relief. As already discussed, the trial court did not determine that there was a unilateral or mutual mistake that warranted reforming the Auction Order. Instead, it determined that there was a latent ambiguity and then made findings to resolve that ambiguity. After resolving the ambiguity, the trial court acknowledged that it had made a mistake when it ordered the receiver to provide plaintiff with a copy of the medical records. A trial court may grant relief under MCR 2.612(C)(1)(a) on the basis of its own mistake. *Altman*, 197 Mich App at 477. Consequently, plaintiff's arguments concerning unilateral mistake are inapplicable.[4]

Plaintiff failed to demonstrate that the trial court lacked the authority to grant relief under MCR 2.612(C)(1)(a). The trial court's decision to grant defendant's request for relief was within the range of reasonable and principled outcomes. *Maldonado*, 476 Mich at 388. Plaintiff also did not show that the trial court clearly erred when it resolved the ambiguity in defendant's favor. *LaFond*, 226 Mich App at 450.

---

[3] Although defendant did not specifically argue that it was the trial court's mistake that caused plaintiff to obtain a copy of the medical records under MCR 2.612(C)(1)(a), he sufficiently claimed entitlement to relief under MCR 2.612(C)(1) as a result of the now devalued purchase.

[4] Plaintiff's contention that defendant was not entitled to relief under MCR 2.612(C)(1)(f) is without merit because the trial court did not grant relief in accordance with this subsection.

## F.  VALUE OF MEDICAL RECORDS

Plaintiff next argues that the trial court clearly erred when it found that the value of the medical records to defendant was $298,869.  We disagree.

At the evidentiary hearing, defendant testified that the personal property other than the medical records had marginal value to him.  In his view, the medical records were worth as much as $3 million, and he was thrilled that he got them for only half that amount.  He stated that he would have bid much lower for the lots without the medical records included; indeed, he agreed that his proposed value for the personal property without the medical records was less than the minimum bid set by the receiver using the fair market value of the property itemized on the property lists.  In contrast, plaintiff testified that he did not understand the lots to include the exclusive right to the medical records.  Nevertheless, he felt the lots still had value and bid on them accordingly.  He did not attribute a high value to the medical records, but opined that active patient cash flow was the key consideration.

The testimony supported a wide range in value for the exclusive right to the medical records, and the trial court concluded that neither party presented a credible valuation.  Instead, it found that the appropriate calculation for the value was the difference between the amount of defendant's winning bids and the minimum bids applicable to the lots, which was $298,869.

The trial court's finding as to the value of the medical records was premised on an assessment of the weight and credibility to be afforded the evidence and testimony.  Reasonable people might disagree with its finding, but the trial court was in the best position to assess the weight and credibility of the evidence, MCR 2.613(C); *Martin v Arndt*, 356 Mich 128, 140; 95 NW2d 858 (1959), and the record was not so skewed in favor of a different amount that we are left with the definite and firm conviction that the trial court erred.  *LaFond*, 226 Mich App at 450.

## G.  $40,000 MIGRATION FEE

Plaintiff also argues on appeal that the trial court erred when it ordered that he be held responsible for the $40,000 fee charged by Cerner to create a copy of the patient medical records held by the former practices for his new practice.  We disagree.

As already discussed, the trial court had broad authority to provide relief in the interests of substantial justice, MCR 2.612(C)(1)(a); *Kaleal*, 73 Mich App at 191, which included the authority to provide relief from orders that it entered as a result of its own mistake, *Altman*, 197 Mich App at 477.  After the hearing to resolve the ambiguity in the Auction Order, the trial court indirectly acknowledged that it mistakenly ordered the receiver to cause Cerner to transfer a copy of the medical records that defendant purchased to plaintiff.  The trial court had the authority to rectify its mistaken order on terms that were just.  MCR 2.612(C)(1)(a); *Altman*, 197 Mich App at 477.  Because it would be inequitable to have the estate pay an expense solely for the benefit of plaintiff, it was just for the trial court to correct the mistake by ordering that plaintiff would be responsible for that expense.  The trial court did not abuse its discretion.  *Maldonado*, 476 Mich at 388.

## III.  MOTION FOR RECONSIDERATION

Finally, plaintiff argues that the trial court abused its discretion when it denied his motion for reconsideration. We disagree.

Plaintiff had the obligation to demonstrate that the trial court made a "palpable error" and had to show that "a different disposition of the motion must result from correction of the error." MCR 2.119(F)(3). Although the trial court had the discretion to give plaintiff a "second chance" with his motion for reconsideration, *Yoost v Caspari*, 295 Mich App 209, 220; 813 NW2d 783 (2012), the trial court had no obligation to grant a motion that "either expressly or by reasonable implication" merely presented the same issues already ruled on by the court, MCR 2.119(F)(3).

The trial court had the broad authority to grant relief on just terms. MCR 2.612(C)(1); *Kaleal*, 73 Mich App at 191. Accordingly, once the trial court realized that it mistakenly ordered the transfer of defendant's personal property to plaintiff, it could properly grant defendant relief under MCR 2.612(C)(1)(a) to correct the harm. Accordingly, the trial court did not err when it concluded that its predecessor could properly grant relief under that court rule. Because plaintiff failed to identify a palpable error the correction of which would result in a different disposition, the trial court did not abuse its discretion when it denied his motion for reconsideration. *Maldonado*, 476 Mich at 388.

Affirmed. As the prevailing party, defendant may tax costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

-9-